GALVESTON, H. & S. A. RY. CO. v. LIUZZA. (No. 354.)

(Court of Civil Appeals of Texas. Beaumont. March 7, 1918.)

RAILROADS ⬦417—INJURIES TO ANIMALS—PROXIMATE CAUSE.

Where plaintiff's cattle while in a city were run down by defendant's train, which was proceeding in excess of the speed allowed by ordinance, and there was testimony that had the train not been proceeding so fast the cattle could have been driven from the tracks and the accident avoided, recovery cannot be denied on the theory that the railroad company's violation of the municipal ordinance was not the proximate cause.

Appeal from Harris County Court; W. E. Monteith, Judge.

Action by V. Liuzza against the Galveston, Harrisburg & San Antonio Railway Company, begun in justice court and appealed by defendant to county court. From a judgment there in favor of plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant. Meek & Kahn, of Houston, for appellee.

BROOKE, J. This is an action instituted by the plaintiff, V. Liuzza, in the justice court, against the Galveston, Harrisburg & San Antonio Railway Company for damages in the sum of $165 on account of the alleged negligent killing of two cows on the 17th day of September. Plaintiff reserved the right to plead further orally, and supplemented the written memorandum of his petition by further oral pleading to the effect that the negligence of the defendant consisted in running its train at an excessive and unlawful rate of speed, and in violation of the city ordinance prohibiting the running of a train beyond six miles an hour, and that if defendant had not exceeded said speed limit, they could have stopped the train in sufficient time to have avoided the accident if they had kept a proper lookout. The defendant, besides pleading a general demurrer to the written pleadings as well as to the oral pleading, denied all the allegations of the plaintiff, and further pleaded orally that the plaintiff was guilty of contributory negligence, and that said cattle were running at large at the time of the killing, and that said killing occurred at the place where defendant was not allowed to fence its right of way. On a trial in the justice court on the 11th day of March, 1915, plaintiff recovered a judgment for the sum of $100. The cause was appealed to the county court at law, and on trial before the court and jury on the 2d day of February, 1917, a verdict was found in favor of plaintiff for the sum of $165, and judgment entered accordingly. The case is properly before this court.

The first assignment of error insists that the court erred in refusing to give defendant's requested special charge, directing the jury to return a verdict in its favor on the ground that the evidence was insufficient to authorize a verdict and judgment for the plaintiff. The proposition under this assignment is that, in order for the plaintiff to recover damages for animals killed on a railroad track, it is incumbent upon him, not only to prove the specific negligence alleged in his petition, but also that such negligence was the proximate cause of his loss. The plaintiff having predicated his right to recovery on the alleged excessive and unlawful speed of defendant's railway train in running same at a rate in excess of the city ordinance in the city of Houston, and having failed to establish any causal connection between the excessive speed, if any, of the defendant's railway train and the killing of his cows, the court should have instructed a verdict in favor of the defendant for the reason that the plaintiff has failed to establish that the alleged negligence relied on by him was the proximate cause of his damages. As a counter proposition, it is insisted that the court did not err in refusing to give said special requested instruction, because the evidence was amply sufficient to require the court to submit the cause to the jury.

It seems that the plaintiff was in the dairy business in the city of Houston about four blocks from the place where the two animals sued for were killed, and the killing occurred under the following circum-

stances: On the night of September 17, 1913, the witness had been absent from home, and when he came home noticed that the fence was broken where the cattle were penned, and, after seeing that the fence was broken and that the cattle had gotten out, he went to look for the cattle about 11 o'clock at night. He found them and began to drive them home. Just as he was driving them home a passenger train of the defendant company was approaching, and, to use the language of James Liuzza, the said passenger train was going at a high rate of speed, and hit two head of said cattle, and, according to his testimony, the train was going about 25 miles an hour when it struck the cattle; that the cattle were killed right on the crossing. He testified that he was driving from the bayou side toward home; that he could not head them off because the train was going too fast; that if the train had been going slow, say about 6 miles an hour, he could have done something, that is, he could have run the two head of cattle off the right of way and saved them from being hit, but from the way the train was going there was not any chance for him to do anything. On cross-examination he testified:

"I heard the train whistle when they were blowing for the tower; the train generally blows about four or five blocks from the tower. It must have been in the neighborhood of a couple of blocks. The tower is about a couple of blocks from the crossing. If the train was going slow I could no doubt got ahead of them and headed them back on the safe side. The train was going, I won't say 50 or 75, it was going very fast. I was right off the track when the train came by. I didn't quite get on the track, and if it was coming slow he could have stopped it and avoided it. The train was going to the city depot. The two that were killed were Jersey cows. They were at the head of the group. I would say I was about half a block behind them. The cattle were killed in the city limits of the city of Houston."

Upon redirect examination he testified:

"After I heard the whistle blow, if the train had been traveling at six miles an hour I would have had time to save the cattle from being struck."

This testimony shows that the witness saw the train strike the two head of cattle, and, according to his statement, if the train had been going at the rate of six miles an hour he could have driven the cattle off the track in time to have averted the accident.

We believe this case is distinguishable from many of the other cases along this line, in that the proof in this case shows that, but for the excessive rate of speed of the train that killed the animals in question, this accident would have been averted. The party was driving the cattle home after they had broken out of the pen. The proof is undisputed that but for the speed of the train the party being present with the cattle could have gotten them off the right of way. This was not disputed in any way. The party was aware of the approach of the train, and if the ordinance had been observed in this case, and if the train had proceeded at the rate of six miles an hour, the testimony is that the party being with the cattle could have gotten the cattle off the track, and averted the injury. Therefore, in our judgment, it seems that this is a case in which the violation of the city ordinance was the proximate cause of the injury. The assignment is therefore overruled.

Complaint is made by the second assignment that the verdict should be set aside as contrary to the law and great weight and preponderance of the evidence, in that there is no testimony to sustain the damage sustained.

The testimony is that the cattle killed were Jersey cattle, and that the value fixed by the jury is a reasonable one. The assignment is overruled, and the judgment affirmed.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes